# In the District Court of the United States
## For The District of South Carolina
### BEAUFORT DIVISION

| | | |
|---|---|---|
| **Herman Anthony Wallace,** | ) | Civil Action No. 9:05-2950-MBS-GCK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF THE MAGISTRATE JUDGE** |
| **M. A. Johnston, SC State Trooper,** | ) | |
| **A. G. Wilson, SC State Trooper,** | ) | |
| **County of Sumter, and** | ) | |
| **South Carolina Highway Patrol,** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I. INTRODUCTION

     The Plaintiff, Herman Anthony Wallace ("Plaintiff" or "Wallace"), an African American male, brought this action pursuant to Title 42, United States Code, Section 1983[1] alleging that his constitutional rights were violated during the course of an arrest conducted by the Defendants South Carolina State Troopers M. A. Johnston and A. G. Wilson.

     This case was automatically referred to the undersigned United States Magistrate Judge for review pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Civil Rules 73.02(B)(2)(d) and (e), D.S.C., which authorize such review of pretrial matters in *pro se* prisoner cases filed under 42 U.S.C. § 1983.

---

[1]     42 U.S.C. §1983 provides, in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

## II. *PRO SE* COMPLAINT

Plaintiff is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F. 2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied, Leeke v. Gordon*, 439 U.S. 970 (1978). Under established local procedure in this judicial district, a careful review has been made of the *pro se* Petition herein pursuant to the procedural provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, Title I, § 104, 110 Stat. 1214. This review has been conducted in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995) (*en banc*), *cert. denied*, 516 U.S. 1177 (1996); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983).

*Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes*, 449 U.S. 5 (1980). Even under this less stringent standard, however, the *pro se* complaint nonetheless may be subject to summary dismissal. The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999). Likewise, a court may not construct the plaintiff's legal arguments for him (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986). The requirement of liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Social Services*, 901 F.2d 387 (4th Cir. 1990).

### III. *IN FORMA PAUPERIS* PLEADINGS

Plaintiff brought this action *in forma pauperis* ("IFP") under 28 U.S.C. § 1915, which permits an indigent litigant to commence an action in federal court without paying the administrative costs before proceeding with the lawsuit. [2-1] To protect against possible abuses of this privilege, the statute allows a district court to dismiss the case upon a finding that the action "fails to state a claim on which relief may be granted" or is "frivolous or malicious."[2] A finding of frivolity can be made where the complaint "lacks an arguable basis either in law or in fact." *Denton v. Hemandez*, 504 U.S. 25, 31 (1992). Hence, under Section 1915(e)(2)(B), a claim based on a meritless legal theory may be dismissed *sua sponte*. *Neitzke v. Williams*, 490 U.S. 319 (1989). The court may dismiss a claim as "factually frivolous" under Section 1915(e) if the facts alleged are clearly baseless. *Denton v. Hernandez, supra*. In making this determination, the court is not bound to accept without question the truth of the Plaintiff's allegations, but rather need only weigh the Plaintiff's factual allegations in his favor. *Id*.

### IV. FACTUAL BACKGROUND

On or about October 18, 2002, the Defendant M. A. Johnston ("Defendant Johnston"), a South Carolina Highway Patrol Trooper, observed a Ford Contour automobile being driven in an erratic manner in Sumter County, South Carolina, by a person later determined to be John Jackson (Johnston Aff. ¶¶ 1, 2, 3).1 As a result of the erratic driving, Defendant Johnston decided to initiate a traffic stop of the automobile. (Johnston Aff. ¶ 3). The Plaintiff, was a front seat passenger in the vehicle (Johnston Aff. ¶ 3). Upon stopping the vehicle, Defendant Johnston thought it best to call for assistance and called South Carolina State Highway Patrol Trooper Defendant D. G. Wilson (Johnston Aff. ¶ 4). Defendant Wilson arrived at the scene and proceeded to the passenger side of the vehicle. (Johnston Aff. ¶ 4; Wilson Aff. ¶ 1). At that time, Defendant Johnston had already begun speaking to the driver, Mr. Jackson. In so doing,

---

[2]        See 28 §§ 1915(e)(2)(B)(i), (ii).

both Defendants Johnston and Wilson noticed the occupants of the vehicle behaving in what they perceived to be a strange and unusual manner (Johnston Aff. ¶ 4; Wilson Aff. ¶ 4). Specifically, according to Defendants Johnston and Wilson, Mr. Jackson and the Plaintiff were acting nervous, fidgeting in the vehicle, and would not look them squarely in the eyes (Johnston Aff. ¶ 4; Wilson Aff. ¶ 4). Defendants Johnston and Wilson knew "something was not right" (Johnston Aff. ¶ 4; Wilson Aff. ¶ 4). Concerned for their safety, Defendant Wilson asked the Plaintiff to exit the vehicle (Johnston Aff. ¶ 4; Wilson Aff. ¶ 4). Upon the Plaintiff's exit from the vehicle, the Plaintiff began to run and was apprehended by Defendants Wilson and Defendant Johnston (Johnston Aff. ¶ 4; Wilson Aff. ¶ 4). The Plaintiff struggled extensively and resisted attempts to be detained (Johnston Aff. ¶ 4; Wilson Aff. ¶ 4). During his apprehension, Defendants Johnston and Wilson noticed a revolver in the unlawful possession of the Plaintiff (Johnston Aff. ¶ 4; Wilson Aff. ¶ 4). The revolver was recovered by Defendants Johnston and Wilson (Johnston Aff. ¶ 4; Wilson Aff. ¶ 4). Based upon the facts and circumstances then existing, Defendant Johnston determined that sufficient probable cause existed to arrest the Plaintiff (Johnston Aff. ¶ 5). As a result, the Plaintiff was arrested for both violation of South Carolina Gun laws and resisting arrest and was transported to the Sumter County Detention Center for processing (Johnston Aff. ¶ 5). Upon determining that the Plaintiff had previously been convicted of multiple felonies, a subsequent arrest warrant was issued for his being a convicted felon in possession of a handgun (Johnston Aff. ¶ 5).[3]

On or about November 19, 2002, a preliminary hearing was conducted in connection with both the violation of South Carolina gun law charge and the resisting arrest charge. At that time, the presiding Judge issued a finding of probable cause, as reflected in the arrest warrants (Johnston Aff. ¶ 6; Fant Aff. ¶ 4; Def. Ex. 2). On December 17, 2002, the Plaintiff waived his

---

[3] *See* Arrest Warrant Nos. G-667815, G667816, and H-280125, attached to Defendants' Motion for Summary Judgment [53-1] at Exhibit 2.

right to a preliminary hearing in connection with the charge of being a felon in possession of a handgun (Fant Aff. ¶ 4; Def. Ex. 2).

Defendant Johnston states that the vehicle in which the Plaintiff was a passenger in at the time of the allegations contained herein was not stopped because of the skin color of the occupants in the vehicle (Johnston Aff. ¶ 8).  At the time Defendant Johnston decided to initiate the traffic stop, it was dark and he was unable to determine anything about the appearances of the occupants of the vehicle (Johnston Aff. ¶ 8)

Defendant Wilson is African-American (Johnston Aff. ¶ 8; Wilson Aff. ¶ 8).  Defendants Johnston and Wilson state by affidavit that at no time did either violate the Plaintiff and/or Mr. Jackson's civil rights in any manner whatsoever (Johnston Aff. ¶ 8; Wilson Aff. ¶ 8).  Defendant Johnston states that the vehicle in which Plaintiff was riding as a passenger was stopped for erratic driving, not because of any type of racial profiling, as alleged by the Plaintiff (Johnston Aff. ¶¶ 3, 8,).  In fact, Defendant Highway Patrol has a policy expressly prohibiting any form of racial profiling by its officers (Johnston Supp. Aff. ¶¶ 1, 2; Wilson Supp. Aff. ¶¶ 1, 2).  In addition, all employees of the Highway Patrol, including Defendants Johnston and Wilson, received racial profiling training (Johnston Supp. Aff. ¶¶ 3, Wilson Supp. Aff. ¶¶ 3).

## V.  PROCEDURAL HISTORY

The Plaintiff commenced this Section 1983 action on October 14, 2005[4] against the Defendants M.A. Johnston, D.G. Wilson, the County of Sumter, and South Carolina Highway Patrol, alleging that the rights granted him by Section 1983 were violated when he was allegedly falsely arrested and detained following a traffic stop which occurred on or about October 20, 2002, in Sumter, South Carolina.  Plaintiff also contends that the South Carolina Highway Patrol ("Highway Patrol) failed to adequately train its officers regarding what Plaintiff describes as the

---

[4]    Plaintiff has the benefit of the holding of *Houston v. Lack*, 487 U.S. 266, 101 L.Ed.2d 245, 108 S.Ct. 2379 (1988) with respect to the "delivery" date of his Complaint.  *See* Order [4-1] at p. 2, n.1.

"perils of racial profiling", which he contends, violated his rights under Section 1983. Plaintiff also appears to allege in his Amended Complaint that his Fourth Amendment Rights were violated by the traffic stop.

On December 7, 2005, an Order was issued by this court for the Clerk of Court to issue summonses and forward the complaint and the Forms U.S.M.-285 to the United States Marshall for service of process upon all of the defendants [5]. On that date, the undersigned also granted Plaintiff's motion to proceed IFP [6].

On December 13, 2005, the Plaintiff filed an Amended Complaint against the Defendants Johnston, Wilson, County of Sumter, and the Highway Patrol [8]. On December 22, 2005, the Defendants Johnston, Wilson, County of Sumter, and the Highway Patrol filed a Motion to Dismiss the Action [11], and on December 23 filed an Answer to the original complaint [12]. On December 28, 2005, the undersigned issued an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), notifying Plaintiff of the summary dismissal procedure and the possible consequences if he failed to adequately respond to the Motion to Dismiss [13]. On December 29, the Defendant County of Sumter filed an Answer to the Amended Complaint and a Motion to Dismiss [14; 15].

On January 3, 2006, the undersigned issued an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), notifying Plaintiff of the summary dismissal procedure and the possible consequences if he failed to adequately respond to the Motion to Dismiss filed by the County of Sumter [16]. The Plaintiff responded to the Motion to Dismiss filed by the Defendants Johnston, Wilson, and the Highway Patrol on January 31, [25], and responded to the Motion to Dismiss filed by County of Sumter on February 3, 2006 [26].

Thereafter, the County of Sumter filed a motion for summary judgment and supporting memorandum on March 6, 2006 [33-1; 33-2] and a *Roseboro* Order was issued to Plaintiff on March 7, 2006 [34].

On April 3, 2006, the Defendants Johnston, Wilson, and the Highway Patrol filed an Answer to Plaintiff's Amended Complaint [38].  On April 5, 2006, an Order [39] was filed finding as moot the County of Sumter's Motion for Summary Judgment [33], finding as moot the Motion to Dismiss filed by the Defendants Johnston, Wilson, and the Highway Patrol [11], finding as moot the County of Sumter's Motion to Dismiss [15], and directing the defendants to file answers in response to Plaintiff's Amended Complaint on or before Friday April 14, 2006. On April 10, the Defendant County of Sumter filed a motion for reconsideration of that Order [41], and on April 12, the Court issued an Order [42] which granted the Defendant County of Sumter's motion to the extent that the Defendant County of Sumter was not required to file an additional answer to Plaintiff's Amended Complaint; and also stated that the Defendant County of Sumter's Motions to Dismiss [15] and for Summary Judgment [33] would be heard in due course.

On April 13, 2006, the Defendants Johnston, Wilson, and the Highway Patrol filed an Answer to the Amended Complaint [43].  On June 16, 2006, the Defendants Johnston, Wilson, and the Highway Patrol filed a Motion for Summary Judgment [53].  Another *Roseboro* order was issued to Plaintiff on June 19, 2006 [54]

On July 14, 2006, the Plaintiff filed a motion for an extension of time in which to respond to the motion for summary judgment filed by the Defendants Johnston, Wilson, and the Highway Patrol [56].  On July 18, those Defendants filed their objection to the Plaintiff's motion for an extension of time [57] but the Plaintiff's motion was granted by the undersigned [58].

After the Plaintiff failed to file a response, on September 19, the court issued an Order [61] allowing the Plaintiff ten (10) days to respond to the Motion for Summary Judgment filed by the Defendants Johnston, Wilson, and the Highway Patrol, and advising him that if he failed to respond, his action could be dismissed pursuant to Fed.R.Civ. P. 41(b).  The Plaintiff failed to respond to this Order; accordingly, on October 3, 2006 the undersigned issued a Report and

Recommendation [62] which recommended that the case be dismissed for lack of prosecution. On October 6, Plaintiff filed a response [63] in opposition to the motion for summary judgment and on October 19 Plaintiff filed his objections to the Report and Recommendation [64].

By Order filed on December 18, 2006, the Honorable Margaret B. Seymour, United States District Judge, declined to adopt the Recommendation and recommitted the matter to the undersigned for further proceedings. Thus, pending before the court at this time are the following motions: the Defendant County of Sumter's Motion to Dismiss [15], the Defendant County of Sumter's Motion for Summary Judgment [33], and the Motion to Dismiss filed by the Defendants Johnston, Wilson, and the Highway Patrol [53]. The Defendant County of Sumter's Motion to Dismiss [15] was not accompanied by a supporting memorandum, and thus was not filed in compliance with the Local Civil Rules. The court will recommend that this Motion be deemed moot, and will turn its attention to the two Motions for Summary Judgment. As these are dispositive motions, this Report and Recommendation is entered for review by the District Judge.

## VI.  THE STANDARD FOR DETERMINING A MOTION FOR SUMMARY JUDGMENT

The determination of a motion for summary judgment is governed by the holding in *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

It is important to add that unsupported speculation by a non-moving party is insufficient to defeat a summary judgment motion. *Felty v. Graves-Humphreys Co.*, 818 F. 2d 1126 (4th Cir. 1987). Similarly, genuine disputes of material facts are not demonstrated by the bald statements

of a non-moving party in affidavits or depositions.  *Stone v. University of Md. Medical Sys. Corp.*,  855 F. 2d 167 (4th Cir. 1988).

In deciding whether to grant a motion for summary judgment, all justifiable inferences must be drawn in favor of the non-moving party.  *Miltier v. Beorn*, 896 F.2d 848, 852 (4th Cir. 1990); *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  In addition, "once a plaintiff 'has named a witness to support [his] claim, summary judgment should not be granted without . . . somehow showing that the named witness' possible testimony raises no genuine issue of material fact.'"  *Miltier*, 896 F.2d at 852, *quoting Celotex v. Catrett*, 477 U.S. 317, 328 (1986) (White J., concurring).

For purposes of evaluating the appropriateness of summary judgment, this court must construe the facts are set forth in the light most favorable to the Plaintiff.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("[O]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.") (internal quotation marks omitted); Fed.R.Civ.P. 56(c) (Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.").

When, as in the present case, the Defendants are the moving parties, and the Plaintiff has the ultimate burden of proof on an issue, the Defendants must identify the parts of the record that demonstrate the Plaintiff lacks sufficient evidence.  The nonmoving party, then, must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).  *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

## VII.  ANALYSIS

### A.  Plaintiff Has Failed to State a Claim Against the Defendant County of Sumter.

As a threshold matter, the Plaintiff has failed to state a cause of action against the Defendant County of Sumter, based upon the allegations in the Plaintiff's complaint.  First, Sheriff of Sumter County is not named as a defendant in this matter, nor has he been served.[5]

Plaintiff contends in his complaint that officers with the Sumter County Sheriff stopped him.  It appears that the Plaintiff believes the County of Sumter is responsible for the Sheriff of Sumter County.   Plaintiff, however, has erroneously named the County is this action.  First, no one from the Sumter County Sheriff's Department was involved in this action, and even if someone from the Sheriff's Department were involved, the County of Sumter is not responsible for the Sheriff of Sumter County.

There is no connection between the Sheriff of Sumter County and the named individual Defendants, who are identified as South Carolina State Troopers.  Additionally, the Plaintiff names the South Carolina Highway Patrol as a Defendant.  Plaintiff has provided no evidence to connect the Sheriff of Sumter County with the South Carolina Highway Patrol, or its employees.  Moreover, the affidavit of Sheriff Dennis establishes that the Sheriff employed neither of these individual Defendants at the time of the allegations in the complaint.[6]  Therefore, there is no evidence to connect the Sheriff and the individual Defendants.  Plaintiff has failed to set forth any evidence that the individual Defendants were employed by the Sheriff of Sumter County.

Assuming *arguendo*, even if there were a connection between the Sheriff of Sumter County and the individual Defendants, as the Plaintiff appears to allege, the Plaintiff cannot state a claim against the Defendant County of Sumter.  Neither the Sheriff nor his deputies are county

---

[5]     *See* Affidavit of Anthony Dennis ¶ 2, attached to Defendant County of Sumter's Motion for Summary Judgment [33].

[6]     *See* Affidavit of Anthony Dennis ¶ 3.

employees.  *See Heath v. Aiken County*, 295 S.C. 416, 368 S.E.2d 904 (1988); *Cone v. Nettles*, 308 S.C. 109, 417 S.E.2d 523 (1992).  To the contrary, the Sheriff and his deputies are state officials.  *Id*.  The *Heath* court specifically held that deputies are not employees of the county, and thus not covered by county personnel policy and procedure.  368 S.E.2d at 906.  Therefore, even if the Plaintiff could provide evidence that the named Defendants were employed by the Sheriff of Sumter County, which he has not done, the Plaintiff cannot establish any connection to the County of Sumter.

The Plaintiff has failed to state a claim against the Defendant, County of Sumter, and it is recommended that the Defendant County of Sumter's Motion for Summary Judgment [33] should be granted.

### B.  Whether Plaintiff Has Stated a Cause of Action Under Section 1983

Section 1983, the primary basis for jurisdiction of the Plaintiff's lawsuit, provides in part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof, to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."  Accordingly, as required by statute, Plaintiff must meet two requirements to bring suit under Section 1983.  First, he must show that the defendants deprived Plaintiff of his rights "under color of" state law, and second, that the deprivation is of a right guaranteed by the Constitution or laws of the United States.

"It is well-settled that '[i]n order for an individual to be liable under § 1983, it must be 'affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights.' "  *Davis v. D.S.S. of Baltimore Cty.*, 941 F.2d 1206 (4th Cir. 1991) (unpublished), *quoting Wright v. Collins,* 766 F.2d 841, 850 (4th Cir. 1985).  However,

Plaintiff's Complaint demonstrates no evidence of personal involvement on the part of these Defendants.

## 1.  The Traffic Stop

The Plaintiff appears to allege in his Amended Complaint that his Fourth Amendment Rights were violated by the traffic stop.  The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV.  Because a traffic stop of a vehicle constitutes a seizure within the meaning of the Fourth Amendment, such stops must also be reasonable under the circumstances.  *See Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).  "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred," *id*., or "a reasonable suspicion supported by articulable facts that criminal activity may be afoot[.]"  *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (internal quotation marks omitted).  As long as the officer has a reasonable suspicion that even a minor traffic offense has occurred or is occurring, the stop of the vehicle is constitutionally permissible.  *See United States v. Hassan El*, 5 F.3d 726, 730 (4th Cir. 1993).  Likewise, "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion."  *Illinois v. Wardlow*, 528 U.S. 119, 124 120 S.Ct. 673,676 145 L.E.2d 570 (2000) (citations omitted).

In the present case, it is undisputed that Defendant Johnston observed the vehicle that the Plaintiff was a passenger in a vehicle being driven in an erratic manner (Johnston Aff. ¶ 3).  No genuine issue of material fact exists in this regard.  Accordingly, Defendant Johnston had a reasonable suspicion to perform an investigatory stop of the vehicle.  Because Defendant Johnston had a reasonable suspicion to perform an investigatory stop, Plaintiff is unable to show that his Fourth Amendment rights were violated.  Thus, summary judgment in favor of

Defendants Johnston, Wilson and the Highway Patrol is appropriate with respect to Plaintiff's Fourth Amendment claims relating to the traffic stop.

## 2. The Arrest

Next, Plaintiff appears to allege in his Amended Complaint that his Fourth Amendment rights were violated by his arrest. However, because the arrest of the Plaintiff was also constitutionally permissible, summary judgment in favor of Defendants Johnston, Wilson, and the Highway Patrol is appropriate.

As the United States Supreme Court recently stated, "[t]he Fourth Amendment is not violated by an arrest based on probable cause." *Graham v. Connor*, 490 U.S. at 396. Similarly, a warrantless arrest is valid if the arresting officer has probable cause to believe the suspect has committed an offense, and the officer's decision that probable cause is present is reviewed under a totality of the circumstances test. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Probable cause exists when the facts and circumstances within an officer's knowledge are "sufficient to warrant a prudent man in believing that the [individual] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).

From the record before the court, Defendants Johnston, Wilson and the Highway Patrol had probable cause to arrest the Plaintiff. Before Defendants Johnston and Wilson stopped the vehicle, both Defendants Johnston and Wilson noticed the driver and the Plaintiff, as occupants of the vehicle, behaving in what they perceived to be a strange and unusual manner (Johnston Aff. ¶ 4; Wilson Aff. ¶ 4). Defendants Johnston and Wilson both noticed that the Plaintiff was acting nervously, fidgeting in the vehicle, and would not look them squarely in the eye (Johnston Aff. ¶ 4; Wilson Aff. ¶ 4). Defendants Johnston and Wilson knew "something was not right" (Johnston Aff. ¶ 4; Wilson Aff. ¶ 4). Concerned for their safety, Defendant Wilson asked the Plaintiff to step out of the vehicle (Johnston Aff. ¶ 4; Wilson Aff. ¶ 4). Upon the Plaintiff's exit

from the vehicle, the Plaintiff began to run and was apprehended by Defendants Wilson and Johnston (Johnston Aff. ¶ 4; Wilson Aff. ¶ 4).  The Plaintiff struggled, and resisted attempts to be detained (Johnston Aff. ¶ 4; Wilson Aff. ¶ 4).  During his apprehension, Defendants Johnston and Wilson noticed a revolver in the possession of the Plaintiff (Johnston Aff. ¶ 4; Wilson Aff. ¶ 4).  The revolver was recovered by Defendants Johnston and Wilson (Johnston Aff. ¶ 4; Wilson Aff. ¶ 4).  Thus, the record reflects that Plaintiff resisted arrest and was in possession of a revolver.  This evidence is sufficient to establish probable cause for the Plaintiff's arrest.

On or about November 19, 2002, a preliminary hearing was conducted in connection with both the violation of South Carolina gun law charge and the resisting arrest charge.  At that time, the presiding Judge issued a finding of probable cause, as reflected on the arrest warrants (Johnston Aff. ¶ 6; Fant Aff. ¶ 4; Def. Ex. 2).  On December 17, 2002, the Plaintiff waived his right to a preliminary hearing in connection with the charge of being a felon in possession of a handgun, as also reflected on the attached arrest warrant (Fant Aff. ¶ 4; Def. Ex. 2). Under such circumstances, as held by the Fourth Circuit Court of Appeals in *Torchinsky v. Siwinski*, 942 F.2d 257, 262 (4th Cir. 1991), when a police officer protects a suspect's rights by obtaining a warrant from a neutral magistrate, the officer should, in turn, receive some protection from suit under 42 U.S.C. § 1983.  Otherwise, the threat of liability would force officers to continuously second-guess the considered decisions of magistrates.  This in turn would promote delay in the execution of warrants, and alter the proper allocation of law enforcement functions.  Defendant Johnston's actions in seeking the arrest warrants and the magistrate's determination of probable cause provide additional support for his claim that he acted with objective reasonableness.  *See*, *e.g.*, *Massachusetts v. Sheppard*, 468 U.S. 981, 988-91, 104 S.Ct. 3424, 3427-29, 82 L.Ed.2d 737 (1984).  In the present case, the judicial determination of the existence of probable cause to arrest the Plaintiff provides additional support for Defendants' Johnston, Wilson and the Highway Patrol's claim that they acted with objective reasonableness.

In this regard, summary judgment in favor of Defendants Johnston, Wilson, and the Highway Patrol as it relates to the Plaintiff's Fourth Amendment Claims for false arrest, if any, is appropriate.

### 3.  Plaintiff's Claims of Racial Profiling

Plaintiff also alleges in his Amended Complaint that his constitutional rights were violated because he was allegedly subjected to racial profiling.  However, because Plaintiff cannot show that similarly-situated individuals not of a protected class were not prosecuted and/or detained in similar situations, Defendants Johnston, Wilson, and the Highway Patrol are also entitled to summary judgment in their favor as it relates to the Plaintiff's claims of racial profiling.

In *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), the United States Supreme Court held that police officers can temporarily detain motorists when they have probable cause to believe a traffic ordinance has been violated, even if the police have some other motivation to stop the motorist.  The Court, however, expressly limited its analysis to the Fourth Amendment and acknowledged that "the Constitution prohibits selective enforcement of the law based on considerations such as race."  *Id.* at 813.  In the present case, in order to prevail on an equal protection claim in the racial profiling context, the Plaintiff would have to show that the challenged law enforcement practice had a discriminatory effect and was motivated by a discriminatory purpose.  *See Bradley v. United States*, 299 F.3d 197, 205 (3 Cir. 2002). To prove discriminatory effect, Plaintiff must show that he is a member of the protected class and that "similarly situated" persons in an unprotected class were not stopped and/or prosecuted for motor vehicle violations.  *Id.*  In other words, to establish discriminatory effect, an African-American claimant must demonstrate that a law or regulation was enforced against him, but not against similarly situated individuals of other races.  *See United States v. Armstrong*, 517 U.S. 456, 465, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996) (selective prosecution

claim); *Chavez v. Illinois State Police*, 251 F.3d 612, 636 (7th Cir. 2001); *United States v. Hayes*, 236 F.3d 891, 895 (7th Cir. 2001).   The Plaintiff has failed to meet his burden in this regard.

Plaintiff fails to establish a Fourteenth Amendment racial profiling claim because he has not shown that similarly-situated individuals not of a protected class were not prosecuted and/or detained in similar situations.  To the contrary, the sworn testimony of both Defendants Johnston and Wilson reveal that the Plaintiff was not subjected to racial profiling (Johnston Aff. ¶ 8, Wilson Aff. ¶ 8).  As the record reflects, at the time of the decision to stop the vehicle, darkness prevented Defendant Johnston from identifying the vehicle occupants' skin color.  Furthermore, Defendant Wilson is himself African-American.  Additional evidence in the record reveals that the Highway Patrol had a policy prohibiting racial profiling at all times relevant hereto (Johnston Supp. Aff. ¶¶ 1, 2; Wilson Supp. Aff. ¶¶ 1, 2)  There is no genuine issue of material fact, and the Defendants are entitled to summary judgment as a matter of law.

### 4.  Plaintiff's Claims of Failure to Properly Train and/or for Negligent Supervision

Next, Plaintiff appears to allege in his Amended Complaint that the Defendant Highway Patrol also failed to properly train Defendants Johnston and Wilson on the "perils" of racial profiling and that this failure resulted in a deprivation of his civil rights.  However, because Plaintiff cannot show that Defendant Highway Patrol was deliberately indifferent to the rights of citizens, the Defendant Highway Patrol is also entitled to summary judgment in their favor as it relates to the Plaintiff's claims of failure to properly train and/or for negligent supervision.

A police department, through a claim against one of its employees in their official capacity, may be liable for the failure to train its employees only where such failure "reflects 'deliberate indifference' to the rights of its citizens."  *Doe v. Broderick*, 225 F.3d 440, 456 (4th Cir. 2000) (*quoting City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)).  Deliberate indifference may be found "only if 'in the light of the duties assigned to

specific officers or employees, the need for more or different training is...obvious, and the failure to train is likely to result in the violation of constitutional rights.'" *Jordan by Jordan v. Jackson*, 15 F.3d 333, 341 (4th Cir. 1994) (*quoting City of Canton*, 489 U.S. at 390). Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. *Board of County Comm''s of Bryan County v. Brown*, 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). Mere negligence in the failure to train will not suffice to impose Section 1983 liability. A plaintiff also must show that the deficiency in training was the cause-in-fact of the deprivation of rights alleged. *Jordan by Jordan v. Jackson*, 15 F.3d at 341.

As the sworn affidavits of Defendants Johnston and Wilson reflect, the Plaintiff was not subjected to racial profiling (Johnston Aff. ¶ 8, Wilson Aff. ¶ 8). To the contrary, it is undisputed that Defendant Highway Patrol had an official policy, practice, and/or custom which prohibited racial profiling at the time the officers stopped the automobile in which Plaintiff was a passenger (Johnston Supp. Aff. ¶¶ 1, 2; Wilson Supp. Aff. ¶¶ 1, 2). In fact, the official policy of Defendant Highway Patrol prohibits, not only racial profiling, but multiple other types of profiling (Johnston Supp. Aff. ¶ 2; Wilson Supp. Aff. ¶ 2). It is also undisputed that all employees of the Highway Patrol received racial profiling training, including Defendants Johnston and Wilson (Johnston Supp. Aff. ¶ 3; Wilson Supp. Aff. ¶ 3).

To the extent that Plaintiff is also asserting a claim for negligent supervision pursuant to 42 U.S.C. § 1983, this claim also fails because negligence is generally not actionable under 42 U.S.C. § 1983. *See Daniels v. Williams*, 474 U.S. 327, 328-36 & n. 3 (1986); *Davidson v. Cannon*, 474 U.S. 344, 345-48, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986); *Ruefly v. Landon*, 825 F.2d 792, 793-94 (4th Cir. 1987); *Pink v. Lester*, 52 F.3d 73, 78 (4th Cir. 1995) (applying *Daniels v. Williams* and *Ruefly v. Landon* and holding that the District Court properly held that *Daniels* barred an action under Section 1983 for negligent conduct).

Therefore Plaintiff has failed to show that the Highway Patrol was deliberately indifferent to its officers' training or that any deficiency in training caused the deprivation alleged. As well, negligent supervision is not legally actionable under 42 U.S.C. § 1983. It is recommended that the Defendant Highway Patrol be granted summary judgment as it relates to the Plaintiff's failure to properly train and/or for negligent supervision claims.

### C.  Defendants Johnston and Wilson are Entitled to Qualified Immunity

Notwithstanding the foregoing, summary judgment in favor of Defendants Johnston and Wilson also would be appropriate on the grounds of qualified immunity. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). To avoid "excessive disruption of government," a qualified immunity is recognized to protect government officials performing discretionary functions from civil damage suits "insofar as [the officials'] conduct does not violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Officials lose the protection of the immunity if they violate a constitutional or statutory right of the Plaintiff and the right was clearly established at the time of the alleged violation such that an objectively reasonable official in the Defendants' position would have known of it. *See Id.* In *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992), the Fourth Circuit Court of Appeals summarized the requirements for qualified immunity to apply as follows:

> Ruling on a defense of qualified immunity therefore requires (1) identification of the specific right allegedly violated; (2) determining whether at the time of the alleged violation the right was clearly established; and (3) if so, then determining whether a reasonable person in the officer's position would have known that doing what he did would violate the right.

The degree of knowledge of the law imputed to government officials is that imputable generally to a reasonable official. *Porterfield v. Lott*, 156 F.3d 563 (4th Cir. 1998). Accordingly, "all but the plainly incompetent or those who knowingly violate the law" are

protected. *Id.* (*citing Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). In this same light, "officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992). Therefore, if no constitutional right is transgressed, the analysis ends, because government officials cannot have known of a right that does not exist. *See Jackson v. Long*, 102 F.3d 722, 728 (4th Cir. 1996).

The significant deference given to the judgment of government officials acting in good faith is particularly appropriate in cases involving law enforcement officials investigating serious crimes. *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998). The police must have the ability to move swiftly to solve crimes or to apprehend dangerous criminals before evidence is destroyed or becomes stale, witnesses die or vanish, or a suspect has a chance to escape or to repeat the crime. *Id.* "The ability of police officers to protect the public can be severely hampered . . . if their every decision is subject to second-guessing in a lawsuit." *Id.* at 567-68 (*citing Torchinsky v. Siwinski*, 942 F.2d 257, 261 (4th Cir. 1991)). Qualified immunity provides a "safe-harbor" from tort damages for police officers performing objectively reasonable actions in furtherance of their duties. *Id.* at 568.

Viewing the evidence in the light most favorable to the Plaintiff, as is legally required, there is no genuine issue of material fact as to the following: (1) the Plaintiff's vehicle was stopped for erratic driving (Johnston Aff. ¶ 3); (2) the Plaintiff attempted to flee and was apprehended by Defendants Johnston and Wilson (Johnston Aff. ¶ 4, Wilson Aff. ¶ 4); (3) as the Plaintiff was being apprehended, he resisted arrest and a revolver was recovered from the Plaintiff's possession  (Johnston Aff. ¶ 4, Wilson Aff. ¶ 4). Consequently, the Plaintiff was arrested for violating South Carolina gun laws and resisting arrest. Following a probable cause hearing, a judicial officer determined that probable cause existed for the Plaintiff's arrest on the

charges brought against him.[7]  Under these circumstances, qualified immunity is appropriate.  In the present case, no specific constitutional right of the Plaintiff was violated. Instead, the Plaintiff's vehicle was stopped for erratic driving (Johnston Aff. ¶ 3).  This stop was constitutionally permissible.  Similarly, the Plaintiff was arrested for resisting arrest and possession of an unlawful firearm.  Because probable cause existed for this arrest, the Plaintiff's constitutional rights were also not violated in this respect.  Thus, a reasonable person in Defendant Johnston's and Wilson's position could not have known that doing what the undisputed record reflects violated the Plaintiff's constitutional rights.  Summary judgment in favor of Defendants Johnston and Wilson is appropriate for this reason.

## D. Defendants Johnston, Wilson and the Highway Patrol are Immune from Suit by Virtue of the Eleventh Amendment to the United States Constitution.

Next, Defendants Johnston, Wilson and the Highway Patrol also are absolutely immune from suit by virtue of the Eleventh Amendment to the United States Constitution, and they are entitled to summary judgment on this basis.

The Eleventh Amendment to the United States Constitution provides that:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state.  U.S. Const. Amend. XI.

In this regard, the United States Supreme Court has held that, pursuant to the Eleventh Amendment, a state is immune from suits brought in federal courts by its own citizens as well as by citizens of another state or citizens or subjects of any foreign state.  *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Southern Railway Co. v. South Carolina State Highway Department*, 246 F. Supp. 435 (D.S.C. 1965); *see also Cory v. White*, 457 U.S. 85, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982).  Moreover, it is well settled that the Eleventh Amendment precludes a suit against a state agency, entity or institution that functions as an arm or "alter ego"

---

[7]        *See* Defendants' Exhibit 2, attached to [53-1].

of the state. *Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978); *United States v. State of South Carolina*, 445 F. Supp. 1094, 1100 (D.S.C. 1977), *aff'd*, 434 U.S. 1026, 98 S.Ct. 756, 54 L.Ed.2d 775 (1978); *Belcher v. South Carolina Department of Corrections*, 460 F. Supp. 805 (D.S.C. 1978); *Gourdine v. Ellis*, 435 F. Supp. 882 (D.S.C.1977).

The Defendant Highway Patrol is the law enforcement division of the South Carolina Department of Public Safety, an administrative agency of the State of South Carolina, and Defendants Johnston and Wilson were acting in their official capacity as employees of the Highway Patrol at the time of the events giving rise to the Plaintiff's lawsuit. Therefore, Defendants Johnston, Wilson, and the Highway Patrol were functioning as an arm of the South Carolina state government and are the "alter ego" of the State of South Carolina for Eleventh Amendment purposes. *Cribb v. Pelham*, 552 F. Supp. 1217 (D.S.C. 182) aff'd 782 F.2d 1034 (4th Cir. 1985). Thus, Defendants Johnston, Wilson, and the Highway Patrol are entitled to Eleventh Amendment immunity.

Although the immunity afforded to the states by the Eleventh Amendment can be overcome if the state waives its constitutional immunity and consents to suit, the State of South Carolina has not waived its immunity regarding claims such as the ones brought by the Plaintiff. To the contrary, the General Assembly of South Carolina has unequivocally expressed its intent that the State, its agencies and employees not be subject to suit in federal court. The South Carolina Tort Claims Act, S.C. Code Ann. § 15-78-10 *et seq.*, makes state agencies subject to suit in state court under specified circumstances, but specifically provides:

> Nothing in this chapter is [to be] construed as a waiver of the state's...immunity from suit in federal court under the Eleventh Amendment to the Constitution of the United States[.]

Accordingly, Defendants Johnston, Wilson and the Highway Patrol are also entitled to summary judgment in their favor on the basis of Eleventh Amendment immunity.

**E.  Defendants Johnston, Wilson and the Highway Patrol are not "persons"**

**subject to suit under 42 U.S.C. § 1983.**

The Defendants Johnston, Wilson and the Highway Patrol also are entitled to summary judgment on the grounds that they are not "persons" subject to suit under 42 U.S.C. § 1983. Neither a state agency nor a state official in his official capacity is a "person" subject to suit under 42 U.S.C. § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66-67, 71 (1989). Under South Carolina law, the Department of Public Safety is a part of the executive branch of the South Carolina state government. S.C. Code Ann. § 1-30-10(A).  The South Carolina Highway Patrol is, by statute, a division of the Department of Public Safety. *See* S.C. Code Ann. § 1-30-90(B); S.C. Code Ann. § 23-6-20(A).  It is also undisputed that Defendants Johnston and Wilson were, at all relevant times hereto, acting as state officials in their official capacities. Consequently, Defendants Johnston, Wilson and the Highway Patrol cannot legally be considered "persons" subject to suit under 42 U.S.C. § 1983.  Thus, summary judgment in favor of Defendants Johnston, Wilson and the Highway Patrol is recommended.

**F. Defendants Johnston, Wilson and/or the Highway Patrol Cannot**

**Be Held Liable under a Theory of Respondeat Superior**

To the extent that Plaintiff's Complaint attempts to assert a cause of action against Defendants Johnston, Wilson and/or the Highway Patrol on a *respondeat superior* basis, such claims are also subject to summary dismissal.  No genuine issue of material fact exists in this regard.

In general, the doctrine of *respondeat superior* generally is inapplicable to Section 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. *See Monell v. Department of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Fisher v. Washington Metro. Area Transit Authority*, 690 F.2d 1133, 1142-43 (4th Cir. 1982).  Higher officials may be held

liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization. *Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984), *cert. denied*, *Reed v. Slakan*, 470 U.S. 1035, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985).

In the present case, the Plaintiff does not allege that Defendants Johnston, Wilson or the Highway Patrol were deliberately indifferent to, or tacitly authorized, any of the alleged actions or inactions. To the contrary, it is undisputed that the Highway Patrol has a policy which expressly prohibits any form of racial profiling by its officers (Johnston Supp. Aff. ¶¶ 1, 2; Wilson Supp. Aff. ¶¶ 1, 2). Additionally, all employees of the Highway Patrol received racial profiling training, including Defendants Johnston and Wilson (Johnston Supp. Aff. ¶ 3, Wilson Supp. Aff. ¶ 3). Entire police forces and other agencies cannot be held liable for the behavior of one of their officers unless the implementation of an official policy or established custom inflicts constitutional injury. *Monell,* 436 U.S. at 690-91. Here, because there is no evidence that the Highway Patrol has an official policy or established custom authorizing the alleged illegal actions of Defendants Johnston or Wilson, Defendant Highway Patrol cannot be held responsible for such actions. Accordingly, it also is recommended that the Defendants Johnston, Wilson and the Highway Patrol be granted summary judgment on this basis.

Plaintiff has also failed to establish that there was a policy or custom that caused his alleged injury. Therefore, he has not established supervisory liability against these Defendants. *See Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977). Furthermore, *respondeat superior* is not a cognizable foundation for recovery pursuant to 42 U.S.C. § 1983. Therefore, Plaintiff's claims against these Defendant Officers, in their individual capacities, must be dismissed.

## **RECOMMENDATION**

For the foregoing reasons, it is recommended that the Defendant County of Sumter's **Motion to Dismiss [15] be deemed moot;** the Defendant County of Sumter's **Motion for Summary Judgment [33] be granted**; and that the Defendants Johnston, Wilson, and Highway Patrol's **Motion for Summary Judgment [53-1] be granted.**

GEORGE C. KOSKO
UNITED STATES MAGISTRATE JUDGE

January 9, 2007

Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).